IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

GLORIA A. WILLIS                                                    PLAINTIFF

VS.                                    CASE NO. 04-CV-1106

PILGRIM'S PRIDE CORPORATION                                         DEFENDANT

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed on behalf of the Defendant Pilgrim's Pride Corporation. (Doc. No. 26). The Plaintiff Gloria Willis has responded to the motion. (Doc. Nos. 40, 43 and 44). The Court finds the matter ripe for consideration.

## BACKGROUND

In 1992, Gloria Willis, an African American woman, was hired at ConAgra Poultry Company's chicken processing plant in El Dorado, Arkansas. She began working on the night shift hanging chickens in the "vat holding" department. In 1993, Willis bid on and received a job bagging chickens on the bag line. Later, Willis bid on and was awarded another job in "vat holding." This time she worked the day shift. Willis continued to work in "vat holding" until July 2001 when she was discharged for fighting. She filed a grievance over her discharge and, in December 2001, was reinstated by the company. After returning to work, Willis decided to bid on a job on the "big line" (rewashing/cut-up). She received the "big line" job in March of 2002. Willis worked on the "big line" until June 2004.

In November 2001, Willis became a "born again" Christian. She often prayed, quoted scriptures to others, sang and performed her "holy dance" while at work. While Willis states

that this activity did not keep her from doing her job, she received numerous write-ups during this time for poor performance. Also, during this time, Willis filed "a lot" of grievances against her co-workers, supervisors, union stewards, and the Human Resources Manager claiming that they were discriminating against her. All of Willis' grievances were investigated by the Union and all but one was determined to lack merit.

On June 4, 2004, Willis was involved in a verbal confrontation with a co-worker named Regina Harris. Willis states that she was at her workstation when Harris walked up to her and said, "Glo, you ain't counting those birds right."[1] Willis contends that Harris has holding a knife in her hand at the time. Willis responded to Harris saying, "Regina, I am counting the birds right. Watch the line." Harris replied, "I am watching the line."[2] Harris then returned to her workstation. Willis rang for her supervisor, Lorraine Charles, and reported that Harris had come over to her (Willis') workstation and while holding a knife had talked "very aggressive and hostile" toward her.[3] Charles immediately called Harris off the line and spoke to her about the incident.

After speaking to Charles, Harris walked up to Willis and said, "Glo, what you tell Pee-Wee I pulled a knife on you for? If I had of pulled a knife on you, I would have used it."[4] Willis again rang for the supervisor and told her that she wanted to speak with the Human Resources Manager about the incident.

---

[1] Def.'s Ex. 1, Deposition of Gloria Willis, at 224:8-10.

[2] Id. at 224:11-13.

[3] Id. at 231:13-21.

[4] Id. at 233:1-4.

Willis went to the Human Resources office and reported to Ray Poole, the Human Resources Manager, that Harris had threatened to use a knife on her. Poole immediately began an investigation of Willis' allegations. He interviewed and took statements from Willis, Harris and three other co-workers who were present on the floor when the verbal confrontation occurred. All those interviewed stated that Willis and Harris did exchange words on the line, but none of them saw Harris holding a knife during the exchange. From his investigation, Poole determined that Harris did not intend to threaten or harm Willis during the exchange. He also determined that Willis was not in any danger.

Willis continued to be upset over the incident, insisting that Harris had threatened her and that she was not safe. Poole told Willis that she could go home for the remainder of her shift, with pay, and then return to work the next day. Poole also told Willis that the next day he was going to temporarily move her to "vat holding" in light of her safety concerns and to enable him to investigate her "everyday" complaints about her co-workers and supervisors on the "big line." During this transfer, Willis' pay and benefits would remain the same, but her shift would start an hour later. Poole then walked Willis to her car and made sure she got safely off the property.

Willis did not return to work the next day, but rather called in sick. From June 5 to June 9 or 10, Willis continued to call in and not report to work. On June 14, Willis called in again and requested that her paycheck be mailed to her. During this conversation, Poole told Willis that she had accumulated ten (10) points under the company's attendance policy and that if she did not return to work she would be subject to discharge. Willis informed Poole that she was not returning because her lawyer told her not to. After this conversation, Poole wrote Willis the

3

following letter:

> "You have now been off work continuously since Saturday, June 5, 2004. Each of these days has been counted as a point under the attendance policy. As of today, you have accumulated a total of ten (10) points. However, since you have not been at work recently due to this absence, we have not been able to give you the progressive warnings as outlined in the attendance policy. For that reason, this letter is your notice of warning that you have reached the level of discharge for the accumulation of ten points. You must return to work immediately, at least the next day, upon receipt of this letter. I must inform you that you will be subject to discharge if you fail to return to work immediately after receiving this letter."

Letter to Gloria Willis, dated June 14, 2004, Ex. C to the Declaration of Ray Poole (Doc. No. 26-4). Willis received the letter on June 16, 2004 but did not return to work.

On August 16, 2004, Willis filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). In her charge, Willis only checked the boxes claiming discrimination based on race, religion and retaliation.[5] She outlined the events of June 4, 2004 and stated that she did not return to work because nothing was done about the co-worker threatening her. Willis also stated that she believed that she was retaliated against for complaining about unlawful employment practices. On August 25, 2004, the EEOC issued Willis a Right to Sue letter.

On November 4, 2004, Willis filed this action claiming that she had been discriminated against in violation of Title VII of the Civil Rights Act.[6] She claimed that Pilgrim's Pride discriminated against her on the bases of her race, color, sex and religion when it terminated her

---

[5] However, in a letter attached to her EEOC charge, Willis raised claims based on religion, color, sex and retaliation.

[6] Willis originally named Ray Poole, Human Resources Supervisor, Pilgrim's Pride as the defendant in this action. Pilgrim's Pride was substituted as the proper defendant by Court Order dated November 30, 2004.

4

on June 14, 2004. Pilgrim's Pride claims that Willis voluntarily abandoned her job in June 2004 and that she can not make out her *prima facie* case of employment discrimination. Willis has responded stating that she was discriminated against because the company did not do anything to Regina Harris after she threatened her on June 4, 2004. She also claims that she was retaliated against because she reported the June 4 incident to Human Resources and because of the numerous grievance filed by her.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment;

> The judgment sought shall be rendered forthwith if the pleadings, dispositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Krenik v. County of LeSueur,* 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial–whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict

for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur,* 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256.

## DISCUSSION

In her Complaint, Willis alleges that Pilgrim's Pride discriminated against her on the bases of race, color, sex,[7] and religion in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* In employment discrimination cases under Title VII, the Supreme Court has long applied the familiar three-step burden shifting framework set out in *McDonnell Douglas Corp. v. Green,* 41 U.S.792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case of discrimination. If the

---

[7] Pilgrim's Pride contends that Willis' claims should be limited to race, color and religious discrimination because Willis failed to exhaust her administrative remedies in connection with a claim for sex discrimination. However, in a letter attached to her EEOC charge, Willis raised the claim of sex discrimination when she asked the EEOC to investigate her claims of discrimination based on religion, color, sex and retaliation. The Court finds this request to investigate a claim of sex discrimination was sufficient to put this claim before the EEOC, thereby, exhausting Willis' administrative remedies on the claim. Therefore, a claim for sex discrimination is properly before the Court.

plaintiff is able to do this, the burden of production then shifts to the defendant to assert a legitimate non-discriminatory reason for the alleged discrimination. If the defendant sets forth a reason, the burden then shifts back to the plaintiff to establish that the asserted reason was merely a pretext for discrimination. Therefore, the Court must first determine if Willis can established her *prima facie* case of discrimination.

### Willis' Wrongful Termination Claim

Willis claims that she was discriminated against when Pilgrim's Pride terminated her on June 14, 2004. In order to make out a *prima facie* case of wrongful termination, Willis must show that 1) she is a member of a protected group; 2) she was meeting the legitimate expectations of her employer; 3) she suffered an adverse employment action; and 4) similarly situated individuals outside the protected class were treated differently. *Tolen v. Ashcroft,* 377 F.3d 879, 882 (8th Cir. 2004); *Gilmore v. AT & T,* 319 F.3d 1042, 1046 (8th Cir. 2003). Pilgrim's Pride does not dispute that Willis can establish the first two elements of her *prima facie* case. Rather, it contends that she can not establish the third element of her case —that she suffered an adverse employment action. The Court will direct its attention to whether Willis has suffered an adverse employment action.

An adverse employment action must have a materially adverse impact on the terms or conditions of a plaintiff's employment. *Sowell v. Alumina Ceramics, Inc.,* 251 F.3d 678, 684 (8th Cir. 2001). There must be a tangible change in working conditions that produced a material employment disadvantage. *Cooney, et. al. v. Union Pacific Railroad, Co.,* 258 F.3d 731, 734 (8th Cir. 2001). Termination, reduction in pay or benefits, and changes that affect an employee's future career prospects generally meet this standard, as would circumstances amounting to a

constructive discharge. *Kerns v. Capital Graphics, Inc.,* 178 F.3d 1011, 1016 (8th Cir. 1999)(citing *Cross v. Cleaver,* 142 F.3d 1059, 1073 (8th Cir. 1998) and *Parrish v. Immanuel Med. Ctr.,* 92 F.3d 727, 732 (8th Cir. 1996)). However, minor changes in duties or working conditions that cause no materially significant disadvantage do not meet the standard. *Id.* (citing *Harlson v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir. 1994)).

Pilgrim's Pride contends that Willis was not terminated by it. The Court agrees. The evidence shows that Willis voluntarily abandoned her job when she did not return to work after June 4, 2004 and informed the company that she was not returning. However, if Willis was constructively discharged, she can still establish that she suffered an adverse employment action. *MacGregor v. Mallinckrodt, Inc.,* 373 F.3d 923, 928 (8th Cir. 2004). "A constructive discharge occurs when an employee resigns after the employer has created an intolerable working environment in an attempt to compel such a resignation." *Id.* In order to show that she was constructively discharged, Willis must show that 1) a "reasonable person in her situation would find the working conditions intolerable" and 2) the employer "intended to force the employee to quit." *Gartman v. Gencorp Inc.,* 120 F.3d 127, 130 (8th Cir. 1997).

Willis contends that she did not return to work because nothing was done about the co-worker who threatened her. However, something was done; it just wasn't the action that Willis wanted. Pilgrim's Pride investigated Willis' allegations of a threat and determined that the co-worker had not intended to threaten Willis and that she was not in danger. However, despite its conclusion, the company decided to temporarily move Willis away from the co-worker to alleviate Willis' safety concerns. The question is whether this action by Pilgrim's Pride created such intolerable working conditions that Willis was forced to resign. The Court does not believe

that it did.

The fact that Willis found the conditions intolerable is not enough. A "reasonable person" must also come to that same conclusion. This reasonable person standard is an objective one, with its relevant question being whether the employer rendered the working conditions so objectionable that a reasonable person would have deemed the employee's resignation her only plausible alternative. *Tatom v. Georgia-Pacific Corp.,* 228 F.3d 926, 932 (8th Cir. 2000). Also, an employee who quits without giving her employer a reasonable chance to work out a problem can not be constructively discharged because "[p]art of an employee's obligation to be reasonable is an obligation not to assume the worst and not to jump to conclusions too fast." See *West v. Marion Merrell Dow, Inc.,* 54 F.3d 493, 498 (8th Cir. 1995). Here, the company determined that Willis had not been threatened and was not in any danger, however, it was still transferring her away from the perceived threat. Willis has not shown that a reasonable person would have felt forced to resign when faced with these conditions. She did not return to work and never gave Pilgrim's Pride a chance to work out the perceived problems.

There is also no evidence that these conditions were created in order to force Willis to resign or that her resignation was a foreseeable consequences of Pilgrim Pride's actions. See *Allen v. Bridgestone/Firestone, Inc.,* 81 F.3d 793, 796 (8th Cir. 1996). In fact, the evidence shows that the company tried to retain Willis as an employee even after she had reached the point of discharge under the company's attendance policy.

There is no evidence before the Court that the conditions created by this incident were so intolerable that a reasonable person would have felt compelled to resign or that Pilgrim's Pride intended to create these conditions in order to force Willis' resignation. Willis was not

constructively discharged.

After the incident on June 4, 2004, the company decided to temporally transfer Willis to "vat holding." Such a transfer or reassignment could rise to the level of an adverse employment action if it is "a significant change in working conditions." *Fisher v. Pharmacia & Upjohn,* 225 F.3d 915, 919 (8th Cir. 2000). However, "[i]t is well established that '[a] transfer involving only minor changes in working conditions and no reduction in pay or benefits will not constitute an adverse employment action.'" *Spears v. Missouri Dep't of Corr. & Human Res.,* 210 F.3d 850, 853-54 (8th Cir. 2000)(quoting *Ledergerber v. Stangler,* 122 F.3d 1142, 1144 (8th Cir. 1997)). In this case, Willis was being transferred temporally to "vat holding." This temporary transfer did not affect her pay or benefits. Willis only had to report to work one hour later. Willis has failed to articulate in what manner this temporary transfer involved a material employment disadvantage. Willis' transfer to "vat holding" was not an adverse employment action under Title VII.

Willis has failed to produce any evidence showing that she has suffered an adverse employment action in this case. Therefore, she has not established her *prima facie* case of wrongful termination and the Court need not go beyond the first part of *McDonnell Douglas'* three-step process. Willis' wrongful termination claim must fail as a matter of law.

*Willis' Retaliation Claim*

Willis also claims in her response to summary judgment that Pilgrim's Pride retaliated against her in violation of Title VII. Pilgrim's Pride argues that the Court should not consider this claim because it was not pled in her complaint and she has repeatedly confirmed that her claim is limited to one for wrongful termination. The Court agrees that this claim is not properly

before the Court. However, even if it was before the Court, the claim would fail. In order to establish a *prima facie* claim for retaliation under Title VII, Willis would have to show 1) that she participated in a protected activity; 2) that Pilgrim's Pride took adverse employment action against her; and 3) that there is a causal connection between the protected activity and the adverse employment action. *Hunt v. Nebraska Public Power Dist.,* 282 F.3d 1021, 1028 (8th Cir. 2002). As indicated above, Willis has failed to establish any adverse employment action. She can not satisfy the second element of her *prima facie* case of retaliation under Title VII. Therefore, if this claim was properly before the Court, it would fail as a matter of law.

## CONCLUSION

Based upon the foregoing reasons, the Court finds that Defendant Pilgrim's Pride's Motion for Summary Judgment should be and hereby is **granted**. A judgment of even date, consistent with this Opinion, will be issued.

IT IS SO ORDERED, this 27th day of July, 2006.

    /s/Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge